TOWNES HOWELL *v.* STATE.

[53 South. 954.]

1. CRIMINAL LAW. *Instructions. Credibility of witnesses. Presumption of innocence.*

An instruction that, "The jury in passing upon the credibility of the witnesses, who testified in the case, have a right to consider the interest and the motive of the witnesses for testifying falsely, if any appear from the evidence and the manner of the witnesses upon the witness stand connected with all the other evidence in the case, and if you belive any witness has testified falsely on any material facts, you have a right to disregard the testimony of such witness altogether," is erroneous in omitting the necessary qualifying words that the false testimony should have been given willfully and corruptly.

2. PRESUMPTION OF INNOCENCE.

An instruction that, "All presumptions yield and give way to the facts that you are not to presume anything in this case, where you have facts upon which to act," is erroneous in denying to accused the benefit of the presumption which attends the defendant throughout the trial until the rendition of the verdict.

3. REASONABLE DOUBT.

An instruction that, "A reasonable doubt to authorize an acquittal is a doubt arising on the evidence and not a mere possibility of innocence," and an instruction to the jury that, "Under the law you do not have to know that the defendant is guilty before you are authorized to find him guilty, but it is the duty of the jury only to believe from the evidence beyond every reasonable doubt that he is guilty, and in passing upon the guilt or innocence of the defendant,

it is not the duty of the jury to entertain doubts which are purely speculative and unsupported by the evidence," are erroneous in that such instructions do not tell the jury that a reasonable doubt authorizing an acquittal may arise from the lack of evidence.

APPEAL from the circuit court, Copiah county.

HON. D. M. MILLER, Judge.

Appellant, Townes Howell, was tried for murder and convicted of manslaughter and sentenced to ten years in the state penitentiary, and from said judgment appeals to this court.

*Wells & Wells,* for appellant.

The court erred in giving to the state instructions marked numbers three, five and six, which are as follows, to-wit:

"Three. The court instructs the jury that a reasonable doubt to authorize an acquittal is a doubt arising on the evidence and not a mere possibility of innocence."

"Five. The court instructs the jury for the state that under the law, you do not have to know that the defendant is guilty before you are authorized to find him guilty, but it is the duty of the jury only to believe from the evidence beyond every reasonable doubt that he is guilty; and in passing upon the guilt or innocence of the defendant, it is not the duty of the jury to entertain doubts which are purely speculative and unsupported by the evidence."

"Sixth. The court instructs the jury for the state, that what is meant, as a reasonable doubt in this case is a doubt that would arise from the evidence or want of evidence to a reasonable man, and it is not the duty of the jury in this case to acquit the defendant on doubts which are unsupported by the evidence, or which might be purely speculative."

The fatal error of these instructions is the same and is contained in each. Each of them is an effort to define

98 Miss.] ·                Brief for appellant.

what is a reasonable doubt and a direction to the jury not to acquit the defendant on a reasonable doubt unsupported by the evidence or which might arise from the want of the evidence, and each leaves out of the definition one essential element thereof that a reasonable doubt may be founded upon the want of the evidence as well as upon the evidence.

Now, the want of the evidence in behalf of the state in case at bar was and is its great, yea its vital weakness. It had to rely entirely on circumstantial evidence to rebut the positive testimony of the defendant. No wonder then that each definition drawn on behalf of the state as to what constitutes a reasonable doubt should be drawn omitting the essential element above referred to in order that the instructions should be of any service to the state. But how harmful, how fatal the result of this patent error to the defendant?

Not a single instruction for the defendant of the large number obtained in his behalf undertakes to define a reasonable doubt and makes it clear that a reasonable doubt can be found on the want of the evidence just as well as upon the evidence itself. We challenge counsel for the state to point out to us even one such defendant's instruction which was given by the court. The defendant, it is true, asked for an instruction which would have endeavored to correct the vital error which was contained in said three instructions for the state, but it was refused by the court. The court will observe that these definitions of reasonable doubt do not simply omit the essential element of such a definition in not mentioning the fact that it may be founded upon the want of the evidence, but expressly commands the jury not to acquit on any doubt which is unsupported by the evidence, or founded upon the want of the evidence. This then was no simple omission which might be corrected by being supplemented by some other instruction for the defendant, the two making one harmonious definition of the

principle, but the said three instructions state the direct opposite of what is the law on that subject. This constitutes fatal error. It must always be followed by a reversal.

What patience has this court with erroneous efforts to define reasonable doubt? How long, O Lord, how long?

By the instruction for the state, of which complaint is made in the second assignment of error, the learned court undertook the dangerous, if not impossible, task of defining that which is generally held to be indefinable. . . . In the matter of asking instructions, the beaten way is the safe way; the known paths are the sure ones. Reversed. *Brown* v. *State,* 72 Miss. 98.

"It is assigned for error that the court erred in granting the second instruction asked by the state. We hold, at this term, in *Brown* v. *State, ante,* page 95, that this instruction is erroneous. The facts of this case, a case in which the evidence consists of vague threats and circumstantial evidence, emphasized with peculiar force the correctness of that ruling. This certainly is a case in which we cannot say such charge was not material, reversible error. The many unwise efforts to define a reasonable doubt are very remarkable, in view of the previous decisions of this court and of other courts, and of the fact that the phrase itself, 'beyond reasonable doubt' is 'an expression invented by the common law judges for the very reason that it was capable of being understood and applied by plain men in the jury box.' 2 Thomp. Trials, § 2463. If the common law judges in their wisdom settled on this expression, 'beyond a reasonable doubt'—as the one most easily understood by plain men in the jury box, can we not accept this refined gold without seeking to gild it—this lily without painting? . . . and the representatives of the state, an able and accomplished body of gentlemen, should heed the voice of wisdom and caution, saying to them, as to

this brief and plain formula: 'This is the way. Walk you in it.' *Burt* v. *State,* 72 Miss. 410.''

"This charge falls under the condemnation of our opinion in the case of *Brown* v. *State,* 72 Miss. 95, where we first animadverted upon a charge infected with the vice which inheres in this eighth instruction in the present case. It falls under the condemnation of our opinion in the case of *Burt* v. *State,* 72 Miss. 408, etc. . . . We are constrained again to condemn it. 'Precept upon precept, line upon line, here a little and there a little,' is one method of inculcating legal truths, as it is of teaching scriptural truths, and we patiently and hopefully await the results of this method of winning bench and bar to a recognition of and acquiescence in the judgments of the court.'' *Powers* v. *State,* 74 Miss. 780.

"Definitions of reasonable doubt should not be risked in criminal trials. Reasonable doubt is purely and simply a reasonable doubt. It is its own complete definition, and the accused is entitled to his verdict of twelve men, each of whom, on the whole evidence, must be free from any reasonable doubt in his own mind, not the mind of the prosecutor or the court; and he should be allowed to have his own conception of what a reasonable doubt is to him, not the prosecutor of the court; and he should not be under any legal compulsion to have to give, or be able to formulate and state the reason which may raise a reasonable doubt in his mind and conscience. Suffice it to say that if he, in fact, have any, the accused is entitled absolutely to his vote on the verdict.'' *Klyce* v. *State,* 78 Miss., page 454.

If the face of these oft given and earnest admonitions of this court to refrain from attempting definitions of reasonable doubt, the state's counsel through the lower court tried three times to do so and violated these oft given admonitions and slaughtered the rights of the defendant in so doing, surely then this court should not hesitate to reverse therefor.

It hardly needs citation of authority to show that a reasonable doubt may be entertained by a jury from a want of evidence. This court in *Knight* v. *State,* 74 Miss. 141, held as follows, to-wit:

"The first instruction asked for the appellant should have been given as asked. The modification was specially harmful in a case like this, where the defendant relied very strongly upon the want of evidence connecting him with the offense. In the elaborate and learned note of Mr. Freeman to *Burt* v. *State,* 48 Am. St. Rep. 570, S. C., 72 Miss. 408, it is said: 'So it is error to limit a reasonable doubt to something which is suggested by, or arises from or springs out of the evidence adduced, as this gives too narrow a definition of reasonable doubt. Such a doubt may arise from a want of evidence as to some fact having a natural connection with the cause. It has reference to that uncertain condition of mind which may remain after considering what has not been proved, as well as what has. *Wright* v. *State,* 69 Ind. 163 (35 Am. Rep. 212); *Densmore* v. *State,* 67 Ind. 306 (35 Am. Rep. 96). This is in conformity with our holdings in *Hall* v. *State,* 72 Miss. 150. . . . Reversed.''

See also *Jeffries* v. *State,* 77 Miss., page 761; *Matthis* v. *State,* 80 Miss., page 498.

We submit that this error above complained of, three times committed in the state's instructions, no where corrected in the defendant's given instructions, attempted to be corrected in a refused instruction for the defendant, the error being a misdirection on the vital point in this close case, a reversal is inevitable—the vice too patent—the injury to the defendant irreparable. We go further and say that in our judgment these three instructions stating directly the opposite of the law would cause a reversal hereof even though there were a half dozen instructions for the defendant stating the law positively and correctly. This is true because they could

not be harmonized. The jury would have two standards. It would have no true guide on this vital point.

If there were no other errors in this case than those above complained of, we submit that the case should be reversed and remanded.

The court erred in granting instruction number eleven for the state, which instruction is as follows, to-wit:

"11. The court instructs the jury for the state, in passing upon the credibility of the witness, who testified in the case you have the right to consider the interests and the motive of the witness for testifying falsely, if any appear from the evidence and the manner of the witness upon the witness stand, connected with all of the other evidence in the case, and if you believe that any witness has testified falsely on any material facts, you have a right to disregard the testimony of such witness altogether."

This instruction is fatally defective for three separate and distinct reasons, to-wit:

(a) It is manifestly beyond the shadow of a doubt directed at the defendant, Townes Howell, and no jury on earth could understand it under the fact in case at bar to refer to any one else;

(b) After pointing out the defendant it assumes as true a fact, the truth of which we most vehemently deny, a fact which is controverted by the defendant as bitterly as any fact in any case could ever be controverted and which goes to the very vitals of the defense;

(c) After pointing out the defendant it undertakes to invoke the old doctrine of *falsus in uno, falsus in omnibus* without qualifying the false swearing as having been knowingly, or corruptly, or designedly committed. Under the facts of this case, either of these three errors is fatal, and must cause a reversal. We will now discuss them *seriatim.*

(a) This instruction as above stated is manifestly even beyond the shadow of a doubt directed at the de-

fendant and no jury on earth could understand it, under the facts in case at bar, to refer to any one else. In the name of common sense, who else in case at bar, who testified, had any interest or motive to testify falsely save the defendant. Scrutinize the facts of this case and determine not what witnesses had an interest or a motive to testify falsely but what witness (singular or plural). Now, if any one witness must be singled out of all the witnesses as the court directed the jury to do, who else who testified, had one thousandth part the interest and motive to testify falsely, if necessary as the defendant? It will be remembered that the defendant alone testified as an eye witness. This instruction properly given is a two-edged sword, which cuts, if within its reach, both witnesses for the state and witnesses for the defendant. But in this instruction limiting its application to one witness, it cannot be a sword which cuts both ways—it is converted into a spear driven into the very vitals of the defendant himself.

*R. N. Miller,* for appellant.

The third charge given for the state is viciously erroneous, and must alone reverse this case. It tells the jury, "that a reasonable doubt to authorize an acquittal, is a doubt arising out of the evidence, and not a mere possibility of innocence." It leaves out of the definition the important qualification and definition, that it may arise out of the want of evidence.

The fifth charge given for the state tells them positively not to indulge doubts which "are unsupported by the evidence," this with the third charge for the state cuts the defendant off from an acquittal because of a doubt arising out of the failure of proof.

The sixth charge for the state has in it the same vice as the third and fifth. These three charges together deny defendant the right to be acquitted on the state's failure of proof of guilt. They must reverse this case.

The eleventh charge given for the state must standing alone reverse this case. It is the one vital error to which I direct the court's attention. This charge is in these words, "The court instructs the jury for the state, in passing upon the reliability of the witnesses, who testified in the case, you have the right to consider the interest and the motive for testifying falsely, if any (motive) appear from the evidence, etc., and if you believe that any witness has testified falsely on any material facts, you have a right to disregard the testimony of such witness altogether?"

There was no interested witness who testified except appellant, this not only plainly tells the jury that they may consider his interest in determining his credibility which might or might not be reversible error in a plain case, but in this case it is reversible error, to thus burden the defendant where he was the only eye witness and uncontradicted with this charge, as has been held in *Riley's case,* 75 Miss. 354; *R. R. Co.* v. *Tate,* 70 Miss. 349; *Mysack* v. *Wells,* 52 Miss. 149.

This eleventh charge is on the weight of evidence. It affirmatively tells the jury some interested witness has testified falsely, and that the jury might consider his motive for so testifying. It is impossible to imagine what good it would do to consider his motive for false swearing if he had sworn falsely, yet this charge clearly tells the jury some witnesses with interest had sworn falsely, and then tells the jury that they may find out his motive for it in the evidence if they can. This is a direct charge on the weight of the evidence. It does not tell the jury if any witness has testified falsely, but it tells them, "you have a right to consider the interest and motive for swearing falsely," assuming that some interested witness has sworn falsely.

The last paragraph of this charge, No. 11, for the state misapplied the maxim *falsus in uno, falsus in omnibus,* as so often held in this state. It leaves out the vitally

essential qualifications that the false swearing was "will-
fully or corruptly or knowingly" done. See *Belle* v.
*State,* 90 Miss. 104; *Sardis Ry. Co.* v. *McCoy,* 85 Miss.
391; *R. R. Co.* v. *Hedrick,* 62 Miss. 28; *White* v. *State,*
52 Miss. 216; *Finley* v. *Hunt,* 56 Miss. 221; *Gaines* v.
*State,* 48 So. R. 182.

*Carl Fox,* assistant attorney-general, for appellees.

The third assignment argued is that the court erred
in giving to the state instructions numbers 3, 5 and 6
because: First, they attempted to define reasonable
doubt; and second, that they inform the jury that it is not
their duty to entertain doubts which are purely specula-
tive and unsupported by evidence without also inform-
ing them that it is not their duty to indulge in doubts
which arise because of a lack of evidence. I think the
criticism is just, and it is not necessary to argue whether
or not it would be reversible.

The fifth assignment is that the first instruction
granted the state is erroneous. I think this suggestion
is also well taken. Even though the jury had had in evi-
dence before them all of the facts necessary to sustain
a verdict of guilty, if their minds were not made up when
they retired to consider of their verdict it was their duty
to weigh these facts, and to fit them together into a
theory which they believed beyond a reasonable doubt,
before agreeing upon a verdict of guilty. It is undoubt-
edly true that presumptions always give way to facts
when the facts are known; but it is the fact of guilt, and
such fact alone, before which the presumption of inno-
cence disappears. It does not disappear before facts
in evidence from which guilt may be inferred; and while
the jury are considering evidential facts, and up to the
time they find and establish a verdict of guilty, the pre-
sumption of innocence must remain.

Argued orally by *Wells & Wells* and *R. N. Miller,* for
appellant, and by *Carl Fox,* assistant attorney-general,
for appellee.

WHITFIELD, C.

We cannot concur in the contention of the learned counsel for appellant that the court should have given a peremptory instruction to find the defendant not guilty.

On the trial the court gave the following instruction for the state, viz.: "The court instructs the jury, for the state, in passing upon the credibility of the witnesses who testified in the case, you have the right to consider the interest and the motive of the witness for testifying falsely, if any appear from the evidence and the manner of the witness upon the witness stand, connected with all the other evidence in the case; and if you believe that any witness has testified falsely on any material facts, you have a right to disregard the testimony of such witness altogether." This instruction omits the necessary qualifying words that the false testimony should have been given willfully and corruptly, and this instruction has been repeatedly condemned by this court, so often that it is unnecessary to refer again to the cases.

The court gave instruction No. 1, which is in the following language: "The court instructs the jury that all presumptions yield and give way to the facts, and you are not to presume anything in this case, where you have facts upon which to act." The general presumption of innocence attends the defendant throughout the trial until the rendition of the verdict, and is, of course, a thing which remains in the case until that time. This instruction, in its broad and unqualified form, denies this right to the defendant, and it is therefore erroneous.

The third instruction for the state is in the following words: "The court instructs the jury that a reasonable doubt, to authorize an acquittal, is a doubt arising on the evidence, and not a mere possibility of innocence." And the fifth instruction is in the following words: "The court instructs the jury, for the state, that under the law you do not have to know that the defendant is guilty

98 Miss.—29

before you are authorized to find him guilty, but it is the duty of the jury only to believe from the evidence beyond every reasonable doubt that he is guilty; and in passing upon the guilt or innocence of the defendant, it is not the duty of the jury to entertain doubts which are purely speculative and unsupported by the evidence.''

These instructions are both erroneous, in that they do not tell the jury that the reasonable doubt authorizing an acquittal may arise from the lack of evidence. And the sixth instruction for the state, in its concluding clause, is open to the same objection, and is also erroneous for that reason.

In the face of these manifestly erroneous instructions on material points, we are compelled to reverse the case, and remand the cause for a new trial.

*Reversed and remanded.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the judgment is reversed, and the cause remanded for a new trial.