PATTERSON, Chief Justice,
for the Court:
Betty Jean Butler was to have been tried in September, 1983, in the First Judicial District of Hinds County on a manslaughter indictment stemming from the death of her husband. At the time she was 15 years and 11 months old. The jury was impaneled, sworn, and after opening statements had been completed it came to the attention of the court that Betty Jean had not been certified by the youth court to stand trial as an adult. The court, by its own motion, then dismissed the jury and remanded Betty Jean to the youth court.
On November 28, 1983, the youth court transferred the case to circuit court where she was indicted for murder, arising from the same homicide from which the prior indictment had arisen. A motion to dismiss on double jeopardy grounds was filed and overruled.
Betty Jean Butler was thereafter tried and found guilty of manslaughter whereupon she was sentenced to 15 years in prison with 9 years being suspended.
On April 2, 1983, Betty Jean stabbed and killed her husband, Billy Michael Butler. The two lived together in the City of Jackson, in close proximity to both of their parents. At the time Betty Jean was 15 years old and 8 months pregnant while her husband was in his late 20’s or early 30’s. Billy Michael’s eight year old daughter lived in the home with them.
The family and neighbors knew that Betty Jean and Billy Michael fought frequently. Betty Jean’s father testified that before they were married he had quite a problem keeping Billy Michael away from Betty Jean who was just a child. They had been together for about two years before they married in November, 1982, five months before the fatal altercation.
According to Betty Jean’s testimony, on the morning of the occurrence she prepared breakfast for herself, Billy Michael and the eight year old daughter. Billy Michael then left to go to a local beer hall called the Bird Cage. Betty Jean then *1094 dressed and planned to shop for an Easter dress for the daughter. On the way to the shopping mall she stopped by the Bird Cage to request money from Billy Michael to help pay for the dress.
Later after the shopping excursion had been completed, Billy Michael and Betty Jean were again at home where they began arguing about money. The argument ended in the street with Billy Michael beating Betty Jean’s head against the pavement. Betty Jean left the house and walked through the neighborhood to her mother’s.
When her mother learned what had happened she insisted Betty Jean stay with her until the matter blew over. She drove Betty Jean back to her home to get belongings she would need. Billy Michael was in the yard and he and Betty Jean fought again. During this altercation Betty Jean reached in the sleeve of her coat, retrieved a knife she had placed there and stabbed Billy Michael through the heart causing his death. She and her mother then left for her mother’s home where an ambulance was called.
The only issue which needs to be addressed is whether the trial court erred in denying Betty Jean’s motion to dismiss the charge of murder on the ground of double jeopardy. Betty Jean was initially indicted for manslaughter in the circuit court and the trial began with a jury being impaneled and sworn. Under Jones v. State, 398 So.2d 1312 (Miss.1981), jeopardy attaches as soon as the jury has been impaneled and sworn. However, a court without jurisdiction to try the person for the crime charged cannot place the accused in jeopardy, any judgment that might be rendered would be absolutely void, and therefore would not bar subsequent prosecution for the same offense in a court of competent jurisdiction.
This appears to be the general rule. See 21 Am.Jur.2d, Criminal Law, § 254 and particularly State v. Dehler, 257 Minn. 549, 102 N.W.2d 696, 89 A.L.R.2d 496 (1960), which held that a juvenile could subsequently be tried by the district court because in the initial trial the court lacked jurisdiction. See also, Wilson v. State, 154 Tex.Cr.R. 39, 224 S.W.2d 234 (1949), wherein it was held, “there being no power found in the trial court, no jeopardy could attach.” So it is here, in our opinion, because the indictment on a charge of manslaughter conferred no jurisdiction in the circuit court over a minor who had not been transferred from the youth court. At the aborted trial of Betty Jean Butler on the charge of manslaughter, no jeopardy attached because the circuit court had no jurisdictional authority over Betty Jean Butler. The subsequent prosecution for murder and verdict of manslaughter, after she was certified by the youth court to the circuit court for trial as an adult, resulted in a valid judgment.[1]
We have thoroughly studied the briefs and record in this cause and find the verdict of the jury amply supported by the evidence. This, and all other assigned errors, have been fully examined by this Court and found to be without merit.
We affirm both the verdict of guilty and the sentence.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.

. Compare In Interest of W.R.A., 481 So.2d 280 (Miss.1985).